**Opinion filed April 9, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00238-CV

_____

## BLUE GOLD ENERGY BARSTOW, LLC; WEST TEXAS WATER SOLUTIONS, LLC; TRINITY CRAWFORD; CHAD CARSON; DONNIE SEBURG; AND KALEE VANMETER, Appellants/Cross-Appellees

## V.

## PRECISION FRAC, LLC; JARED DAVIS; AND JAMES BRIAN HILLMAN, Appellees/Cross-Appellants

### On Appeal from the 142nd District Court
### Midland County, Texas
### Trial Court Cause No. CV55095

### M E M O R A N D U M   O P I N I O N

Jared Davis, Trinity Crawford, and Chad Carson were members of Precision Frac, LLC. Donnie Seburg and Kalee VanMeter worked for Precision Frac. The relationship between Davis, Crawford, and Carson deteriorated, and Seburg and VanMeter sided with Crawford and Carson. This appeal arises from the second round of litigation between the parties.

Appellees sued Appellants for breach of contract; breach of fiduciary duty; knowing participation in breach of fiduciary duty; conspiracy to use Precision Frac's confidential, proprietary, and trade secret information; and unjust enrichment. Appellants moved to dismiss Appellees' claims pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (the TCPA).[1] The trial court denied the motion.

In four issues, Appellants assert that the trial court erred when it denied the motion to dismiss because Appellees' claims are based on, related to, or in response to Appellants' exercise of the right to petition, the right of association, and the right of free speech and because Appellees failed to produce clear and specific evidence to establish a prima facie case for each essential element of their claims. Appellees filed a motion to dismiss this appeal for lack of jurisdiction and a cross-appeal in which they complain that the trial court erred when it found good cause to extend the time for Appellants to file the motion to dismiss and when it failed to find that the motion to dismiss was frivolous or solely intended to delay.

We affirm the trial court's order because Appellants failed to establish that the TCPA applies to Appellees' claims.

*Background*

Davis, Carson, and Crawford were members of Precision Frac. Seburg and VanMeter were both employed by Precision Frac. Appellees allege that Carson, Crawford, Seburg, and VanMeter signed agreements not to compete with Precision Frac and not to disclose Precision Frac's confidential information.

---

[1]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before September 1 applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

Pursuant to a written contract, J. Michael Evans and Clarabby Holdings, LLC agreed that Blue Gold Energy Barstow, LLC (BGEB) could produce and sell water from Evans and Clarabby's land in Ward County (the Property). Davis, as BGEB's CEO, signed the contract on October 31, 2017. BGEB did not exist at the time that Davis signed the contract. Appellees allege that Davis instructed Seburg and VanMeter to form BGEB as an affiliate of Precision Frac.

Carson, Crawford, Seburg, and VanMeter formed BGEB on June 29, 2018. Davis was not included as a member in BGEB. Crawford and Carson, individually and on behalf of Precision Frac and other companies, also sued Davis in Cause No. CV54756 for the misappropriation of company funds. Davis responded with a number of claims based generally on the theories that Carson, Crawford, Seburg, and VanMeter had defamed him and attempted to deprive him of business opportunities. Carson, Crawford, Seburg, and VanMeter filed a TCPA motion to dismiss some, but not all, of Davis's claims.

On September 7, 2018, Seburg, as the operations manager for BGEB, signed a contract with JLG Aqua, LLC[2] and Clarabby that gave BGEB the right to produce and sell water from the Property. Crawford, Seburg, and VanMeter formed West Texas Water Solutions, LLC (WTWS) on September 27, 2018.

On November 5, 2018, the trial court granted, in part, Carson, Crawford, Seburg, and VanMeter's motion to dismiss in Cause No. CV54756. Specifically, the trial court denied the motion to dismiss as to Davis's claims for wrongful injunction, tortious interference with contract, and tortious interference with business relations. On November 6, 2018, Carson, Crawford, Seburg, and VanMeter appealed the trial court's partial denial of the motion to dismiss, and all trial-court proceedings in Cause No. CV54756 were stayed pending resolution of that appeal. CIV. PRAC. & REM. § 51.014(a)(12), (b) (West Supp. 2019).

---

[2]The contract identified J. Michael Evans as the managing member of JLG Aqua, LLC.

3

Appellees filed this case on November 13, 2018. Appellees alleged that Crawford, Carson, Seburg, and VanMeter (1) had signed confidentiality and noncompete agreements with Precision Frac, (2) waited to form BGEB until they no longer worked for Precision Frac, (3) did not include Davis as a member of BGEB in an attempt to steal the water agreement from Davis and to compete with Precision Frac, and (4) formed WTWS to compete with Precision Frac. Appellees also alleged that James Brian Hillman provided services to Precision Frac related to the water agreement, that Davis agreed that Hillman would be paid 5% of the water sales for his services, that VanMeter worked closely with Hillman on the water agreement, and that Hillman had not received the promised payment.

Appellees asserted causes of action against Crawford, Carson, Seburg, and VanMeter for breach of the confidentiality and noncompete agreements, breach of fiduciary duty as to Precision Frac and Davis, and breach of fiduciary duty and knowing participation in breach of fiduciary duty as to Hillman. Appellees asserted claims against all Appellants for conspiracy to use Precision Frac's confidential, proprietary, and trade secret information to compete with Precision Frac and for unjust enrichment. Finally, Appellees alleged that BGEB and WTWS were alter egos of each other and of Crawford, Carson, Seburg, and VanMeter and were being used to perpetuate a fraud and commit wrongful acts. Appellees sought both damages and injunctive relief.

The trial court heard Appellees' request for a temporary injunction on December 12, 2018. The trial court found that the issues in this case were intertwined with the issues in Cause No. CV54756 and that it could not move forward on the requested injunctive relief in this case without potentially violating the automatic stay in Cause No. CV54756. The trial court stayed the proceedings in this case pending the outcome of the interlocutory appeal in Cause No. CV54756.

In that interlocutory appeal, Davis asserted that he was being harmed by the automatic stay of the trial-court proceedings and requested to withdraw the contested claims so that litigation could proceed in the trial court. *Crawford v. Davis*, No. 11-18-00306-CV, 2019 WL 2147727, at *2 (Tex. App.—Eastland May 16, 2019, no pet.) (mem. op.). Based on the "unusual circumstance" that both parties requested that Davis's claims be dismissed, we reversed the trial court's order to the extent that it partially denied the motion to dismiss and rendered judgment that Davis's claims for wrongful injunction, tortious interference with contract, and tortious interference with business relations were dismissed with prejudice. *Id.* We issued our opinion in *Crawford* on May 16, 2019.

On May 17, 2019, Appellants filed a TCPA motion to dismiss Appellees' claims in this case. Appellants argued that Appellees' claims are based on, related to, or in response to Appellants' exercise of the right to petition, the right of association, and the right of free speech. Appellees moved to strike the motion to dismiss as untimely.

The trial court found that there was good cause to allow Appellees to file the motion to dismiss outside the statutory 60-day time frame. The trial court also found that Appellees' claims "do not infringe upon any of the constitutional rights of [Appellants] regarding freedom of association, freedom of speech or right of petition." The trial court denied Appellees' motion to dismiss and ordered that counsel "may submit affidavits pertaining to attorneys' fees and sanctions for determination by submission to the Court." Appellants filed this interlocutory appeal from the trial court's order.

## Jurisdiction

As a threshold matter, we must address Appellees' motion to dismiss this appeal for lack of jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("[A] court must not proceed on the merits of a case

5

until legitimate challenges to its jurisdiction have been decided."). Appellees argue that if, as Appellants contend, the claims in this case mirror Davis's claims in Cause No. CV54756, then Appellants were required to file a motion to dismiss the claims in this case within sixty days of service of Davis's claims in the first case. Appellees specifically assert that Appellants' second motion to dismiss "was untimely as to those claims as having not been contested within 60 days of their filing in the first action, which denies this Court any jurisdiction over this matter." Appellees apparently contend that this court does not have jurisdiction over an interlocutory appeal from an order in which a trial court denies an untimely motion to dismiss.

A party must file a motion to dismiss under the TCPA not later than the sixtieth day after the date of service of the legal action. CIV. PRAC. & REM. § 27.003(b). However, the trial court may, if good cause is shown, extend the time period to file a motion to dismiss. *Id.* In this case, the trial court specifically found that "good cause exists to allow the filing of the Motion to Dismiss outside the statutory 60-day timeline."[3] Accordingly, the motion to dismiss was not untimely.[4] *See Schimmel v. McGregor*, 438 S.W.3d 847, 856 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

---

[3]Appellees assert:

> [T]he trial court's order only addressed this "good cause" argument as looking at the second matter having been stayed by the TCPA motion filed in the first matter. When considering [Appellants'] argument that the claims mirror each other, there is not a good cause showing why the TCPA motion in the first matter did not also seek dismissal of any mirrored claims.

The trial court's finding of "good cause" is not limited to the consideration that Cause No. CV54756 was subject to the automatic stay. Further, to the extent that Appellees contend that there were factors that the trial court did not consider in its good-cause analysis, those considerations should have been raised in the trial court. *See Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at *6 (Tex. App.—San Antonio, Sept. 30, 2019, no pet.) (mem. op.) (citing *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 194 (Tex. App.—El Paso 2014, no pet.)).

[4]We note that a trial court's determination that there is good cause to extend the time to file a motion to dismiss might be subject to challenge at some point in the appellate process. However, Appellees have cited no authority that supports a proposition that our jurisdiction depends on whether the trial court made a correct ruling.

Appellate courts have jurisdiction over interlocutory orders only when that authority is explicitly granted by statute. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). A party may file an interlocutory appeal from an order in which the trial court denies a motion to dismiss. CIV. PRAC. & REM. §§ 27.008(b); 51.014(a)(12). The notice of appeal must be filed within twenty days after the order is signed. TEX. R. APP. P. 26.1(b). In this case, the trial court denied Appellants' motion to dismiss on July 17, 2019, and Appellants timely filed a notice of interlocutory appeal from that order on July 22, 2019. We deny Appellees' motion to dismiss this appeal for lack of jurisdiction.

*Analysis*

The TCPA protects citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." CIV. PRAC. & REM. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). We construe the TCPA "liberally to effectuate its purpose and intent fully." CIV. PRAC. & REM. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

The TCPA provides for an expedited dismissal procedure when a legal action is based on, related to, or in response to a party's exercise of the right of free speech, right to petition, or right of association. CIV. PRAC. & REM. § 27.003(a); *Youngkin v. Hines* 546 S.W.3d 675, 679 (Tex. 2018). The movant has the initial burden to demonstrate by a preponderance of the evidence that the legal action is based on, related to, or in response to the movant's exercise of one of the rights protected by

7

the statute. CIV. PRAC. & REM. § 27.005(b); *Youngkin*, 546 S.W.3d at 679. If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Youngkin*, 546 S.W.3d at 679. Even when the nonmovant satisfies that burden, the trial court must dismiss the legal action if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." CIV. PRAC. & REM. § 27.005(d); *see Youngkin*, 546 S.W.3d at 679–80. We review de novo whether the parties satisfied their respective burdens. *Hall*, 579 S.W.3d at 377.

In their first three issues, Appellants contend that the trial court erred when it denied the TCPA motion to dismiss because Appellees' claims are based on, related to, or in response to Appellants' exercise of the right to petition, the right of association, and the right of free speech. All three of these protected rights require a communication. CIV. PRAC. & REM. § 27.001(2)–(4). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

### A. Right to Petition

The "exercise of the right to petition" encompasses "a wide range of communications relating to judicial, administrative, or other governmental proceedings." *Lipsky*, 460 S.W.3d at 586 n.5; *see also* CIV. PRAC. & REM. § 27.001(4). In their first issue, Appellants argue that Appellees' claims are based on, related to, or in response to a communication in or pertaining to a judicial proceeding. *See* CIV. PRAC. & REM. § 27.001(4)(A)(i). Specifically, Appellants contend that Appellees filed this suit in response to Cause No. CV54756, particularly in response to "the mandatory appellate stay that went into effect" when Crawford, Carson, Seburg, and VanMeter filed the notice of appeal in *Crawford*.

Crawford and Carson exercised their right to petition when they sued Davis in Cause No. CV54756, and Crawford, Carson, Seburg, and VanMeter exercised their right to petition when they filed the notice of appeal in *Crawford*. *See Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 227 (Tex. App.—Austin 2018, no pet.) ("[T]he TCPA's definition of 'exercise of the right to petition' 'encompasses most (if not all) claims filed in court.'" (quoting *Serafine v. Blunt*, 466 S.W.3d 352, 390 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring))). However, "[t]he mere fact that the parties were involved in litigation does not mean every subsequent action between them that could result in further litigation relates to or arises out of the judicial proceeding." *Chandni, Inc. v. Patel*, No. 08-18-00108-CV, 2019 WL 6799759, at *7 (Tex. App.—El Paso Dec. 13, 2019, pet. filed). Rather, to establish that the nonmovant's claim is based on, related to, or in response to the movant's filing of previous litigation, the movant must show that the claim is "premised on" the prior lawsuit. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019) (noting that claim that movant breached a contract when it filed an administrative action with the Texas Railroad Commission was "premised on" the prior filing).

The basis of a legal action is determined by the allegations in the plaintiff's petition. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). Appellees' petition does not reference Carson and Crawford's petition in Cause No. CV54756 or the mandatory stay that went into effect when the notice of appeal was filed in *Crawford*. Rather, Appellees' claims in this case are premised on Appellants' conduct outside of the first case. *See Bumjin Park v. Suk Baldwin Props., LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *3–4 (Tex. App.—Austin Oct. 10, 2018, no pet.) (mem. op.); *Serafine*, 466 S.W.3d at 360 (concluding that, to the extent that the nonmovants' claim was based on communications made by the movant outside the context of the lawsuit, the movant failed to establish that the claim was based on,

related to, or in response to the exercise of the right to petition). Therefore, Appellants failed to establish that Appellees' claims are based on, related to, or in response to Appellants' exercise of the right to petition. *See Creative Oil & Gas*, 591 S.W.3d at 137; *Serafine*, 466 S.W.3d at 360. We overrule Appellants' first issue.

## B. Right of Association

The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." CIV. PRAC. & REM. § 27.001(2). In their second issue, Appellants contend that they exercised their right of association when they joined together to pursue, create, and continue business relationships. Appellees respond that conspirators who join together to commit torts and breach noncompetition agreements are not engaged in a "common interest" that is protected by the TCPA.

Whether the "exercise of the right of association," as defined by the TCPA, protects Appellants' alleged conduct and communications is an issue of statutory interpretation that we review de novo. *See Youngkin*, 546 SW.3d at 680. When we conduct this analysis, we interpret the statute's language as a whole and do not read its individual provisions in isolation from one another. *Id.*; *see also Creative Oil & Gas*, 591 S.W.3d at 133. Rather, the meaning of the words used by the legislature "must be drawn from the context in which they are used." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011).

Our objective is to determine and give effect to the legislature's intent as expressed in the language of the statute. *Harper*, 562 S.W.3d at 11; *Youngkin*, 546 S.W.3d at 680. We construe the statute's words "according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680 (quoting *City of Rockwall v. Hughes*, 246 SW.3d 621, 625–26 (Tex. 2008)). "Words and

10

phrases that are not defined by statute and that have not acquired a special or technical meaning are typically given their plain or common meaning." *Lipsky*, 460 S.W.3d at 590. To determine a word's ordinary meaning, we typically look first to its dictionary definitions and then consider the word's usage in other statutes, court decisions, and similar authorities. *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017).

The TCPA does not define the word "common." However, the relevant dictionary meaning of the word "common" is "of or relating to a community at large: public" or "known to the community." *Common*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/common) (last visited on Apr. 8, 2020); *see also Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2020 WL 826729, at *10–11 (Tex. App.—Houston [1st Dist.] Feb. 20, 2020, no pet. h.) (en banc). Based on this definition, the term "common interest," as used in the TCPA, means something more than allegedly tortious communications between individuals in the pursuit of a private business endeavor.

This construction of the term aligns with the conclusion of several of our sister courts of appeals that the exercise of the right of association under the TCPA requires a public or citizen component. *See Tex. Custom Wine Works, LLC v. Talcott*, No. 07-19-00186-CV, 2020 WL 994680, at *4 (Tex. App.—Amarillo Feb. 27, 2020, no pet. h.) (concluding that the legislature intended for the right of association "to require some degree of group participation involving an expression about a matter of public interest"); *Gaskamp*, 2020 WL 826729, at *10–11 (holding that, in the context of the TCPA, "common" means "of or relating to a community at large: public"); *Bandin v. Free & Sovereign State of Veracruz De Ignacio De La Llave*, No. 14-18-00752-CV, 2019 WL 6000580, at *5 (Tex. App.—Houston [14th Dist.] Nov. 14, 2019, pet. filed) (concluding that the type of communication envisioned by the TCPA does not encompass a conspiracy to convert or unlawfully appropriate property); *Dyer v.*

*Medoc Health Servs., LLC*, 573 S.W.3d 418, 426 (Tex. App.—Dallas 2019, pet. denied) (concluding that the exercise of the right of association under the TCPA must involve public or citizen participation); *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 588 (Tex. App.—Fort Worth 2019, pet. denied) ("[T]he plain meaning of the word 'common' in TCPA section 27.001(2)'s definition of 'the right of association' requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit.").[5]

Appellees' claims are premised on alleged communications by Appellants that relate to the breach of their noncompete and confidentiality agreements with Precision Frac and the misappropriation of Precision Frac's confidential, proprietary, and trade secret information and to a conspiracy to commit related torts. These communications benefited only the alleged tortfeasors' private business endeavors and did not involve a matter of public or community interest. Therefore, Appellants failed to establish that Appellees' claims are based on, related to, or in response to an exercise of the right of association. We overrule Appellants' second issue.

### C. Right to Free Speech

The TCPA defines the "exercise of the right of free speech" as a "communication made in connection with a matter of public concern." CIV. PRAC. & REM. § 27.001(3). A "matter of public concern" includes an issue related to health

---

[5]We recognize that several intermediate courts of appeals have held that communications between alleged tortfeasors in furtherance of a shared business interest constitute the exercise of the right of association under the TCPA. *See Morgan v. Clements Fluids S. Tex., LTD.*, 589 S.W.3d 177, 184–85 (Tex. App.—Tyler 2018, no pet.); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *7–8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.); *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 295–96 (Tex. App.—Austin 2018, pet. denied). These courts, however, did not substantively discuss whether the "'common interests' element of the exercise of the right of association was satisfied by the private business interests being advanced through the tortfeasors' tortious conduct." *Gaskamp*, 2019 WL 826729, at *9.

or safety; environmental, economic, or community well-being; or a good, product or service in the marketplace. *Id.* § 27.001(7)(A)–(B), (E).

In their third issue, Appellants argue that Appellees' claims, at the very least, concern a good, product, or service in the marketplace. However, to relate to a matter of public concern, "the communication about goods and services must have some relevance to a wider audience of potential buyers or sellers in the marketplace, as opposed to communications of relevance only to the parties of a particular transaction." *Creative Oil & Gas*, 591 S.W.3d at 134. "[T]he TCPA's reference to 'a good, product, or service' does not swallow up every contract dispute arising from a communication about the contract." *Id.* Communications with a limited business audience that concern a private contract dispute do not relate to a matter of public concern under the TCPA. *Id.* at 136.

Based on Appellees' petition, Appellees' claims implicate (1) Appellants' communications with Precision Frac about the noncompete and nondisclosure agreements; with Hillman, Evans, and Clarabby about the water contract; and with Davis about the formation of BGEB and (2) Crawford, Carson, Seburg, and VanMeter's communications with each other about leaving Precision Frac and about forming BGEB and WTWS. These communications were made before BGEB began the production of water from the Property, had a limited business audience, and concerned private contracts and business interests. Accordingly, Appellants failed to establish that the communications related to a good, service, or product in the marketplace. *See id.*

Appellants also argue that, "[b]ecause of the subject matter of the parties' business," the communications relate to "health and safety, as well as environmental, economic, and community well-being." Again, communications about the private business affairs of the parties are not a matter of public concern under the TCPA. *See id.* at 137 ("A private contract dispute affecting only the fortunes of the private

parties involved is simply not a 'matter of public concern' under any tenable understanding of those words."). Further, communications do not become a matter of public concern simply based on the nature of the parties business—there must be some relevance to issues beyond the interests of the parties. *See Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 239–40 (Tex. App.—Eastland 2019, no pet.) (holding that, for a communication to relate to economic well-being, it must "have an impact on more than the party's personal financial well-being" and to relate to community well-being, a communication must affect "the well-being of the community at large or at least a subset of its residents"); *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *4 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (noting that, to determine whether the TCPA applies, a court "must look to the content of the communications themselves and not focus solely on the occupation of the speaker or the related industry").

None of the communications that underlie Appellees' claims relate to a matter of public concern. Therefore, Appellants failed to establish that Appellees' claims are based on, related to, or in response to Appellants' exercise of the right of free speech. We overrule Appellants' third issue.

Because Appellants did not meet their burden to show by a preponderance of the evidence that the TCPA applies to Appellees' claims, we need not address (1) Appellants' complaint in their fourth issue that Appellees failed to establish by clear and specific evidence a prima facie case for each essential element of their claims or (2) Appellees' first cross-issue in which they assert that the trial court erred when it found that there was good cause to extend the time for Appellants to file the motion to dismiss. *See* TEX. R. APP. P. 47.1.

In their second cross-issue, Appellees request that, after a de novo review, we find as a matter of law that Appellants' motion to dismiss was frivolous or solely

14

intended to delay and remand the case to the trial court for further proceedings consistent with that finding.

If a trial court finds that a motion to dismiss is frivolous or solely intended to delay, it may award the nonmovant court costs and reasonable attorney's fees. CIV. PRAC. & REM. § 27.009(b). Appellees filed a motion to strike Appellants' motion to dismiss and requested that the trial court find that the motion to dismiss was frivolous or solely intended to delay. The trial court has not ruled on that request but has ordered counsel to submit affidavits that pertained to attorney's fees and sanctions "for determination by submission." The record does not reflect that the parties have submitted those affidavits or that the trial court has ruled on whether Appellees are entitled to recover attorney's fees. Because the trial court has not yet ruled on this issue, we decline to address it on interlocutory appeal. *See* TEX. R. APP. P. 33.1(a) (generally, to raise a complaint on appeal, the complaint must have been presented to and ruled on by the trial court).

### *This Court's Ruling*

We affirm the trial court's order.

JOHN M. BAILEY
CHIEF JUSTICE

April 9, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[6]

Willson, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.